UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL L. THOMPSON,

    Plaintiff,

    v.                                                Case No. 24-cv-0800-scd

SARAH FELTES et al.,

    Defendants.

---

## DECISION AND ORDER

---

    Plaintiff Michael Thompson, who is serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed this action under 42 U.S.C. §1983, alleging that his civil rights were violated. Thompson is proceeding on First Amendment retaliation claims against Defendants Sarah Feltes and Jeffrey Freund as well as a Sixth Amendment claim against Feltes. Thompson asserts that Feltes, who was his unit manager, refused to process his disbursement requests because, two months earlier, Thompson had filed an inmate complaint about her staff. Thompson also asserts that Freund, who was an institution complaint examiner, wrongfully rejected two of Thompson's grievances about Feltes. The defendants have moved for summary judgment. For the reasons explained below, the motion will be granted and this case dismissed.

## BACKGROUND

    According to Thompson, in September 2023, he submitted an inmate complaint about a requirement in the visitation policy that he disagreed with. Freund rejected the inmate complaint and instructed Thompson to first try to resolve the issue with Feltes. Thompson went to speak to

Feltes and informed her he had to talk to her before his inmate complaint would be processed. Thompson states that Feltes told him that she does not like when inmates file complaints about her staff. According to Thompson, Feltes also told him that they were not going to resolve his issue, and he should just go file his complaint. Feltes, on the other hand, asserts that she merely reminded Thompson of the policy and assured him that it applies to everyone. Thompson re-submitted the inmate complaint on October 8, 2023. Dkt. No. 43 at ¶¶2-7; Dkt. No. 35 at ¶23.

Freund investigated the inmate complaint and recommended that it be dismissed because staff had correctly followed the policy. Freund asserts that during his investigation of the complaint, he did not speak with Feltes or notify her that the inmate complaint had been submitted. Feltes confirms that she was not interviewed in connection with Thompson's inmate complaint and that it was only because of this lawsuit that she became aware Thompson had submitted an inmate complaint about this issue. Dkt. No. 35 at ¶¶14-18, 25.

A couple months later, in December 2023, Thompson contacted Attorney Christopher Rose about representing him on a challenge to his conviction. Thompson explains that he had been looking for an attorney since 2001, when the Wisconsin Supreme Court dismissed his petition for review after his court-appointed lawyer missed a deadline. Thompson explains that in December 2023, he and Rose agreed that Thompson would pay him $10,000, $9,000 of which Thompson would pay with money in his prisoner trust account. On December 18, 2023, as required by policy, Thompson completed two disbursement requests. The first requested that the institution transfer $8,000 from his regular savings account into his regular account, which had a balance of more than $1,000. The second requested that $9,000 be paid to Rose. Dkt. No. 43 at ¶¶8-11.

Thompson explains that there is a two-step process for the approval of a disbursement request. First, a staff member must verify that the person completing the disbursement request is

2

who he claims to be. Second, the request must be approved. Feltes explains that she is permitted to approve disbursement requests for amounts up to $250. For amounts more than $250, Feltes first gathers relevant information, *e.g.*, what the request is for, the amount, who the money is going to, and any supporting documentation, and then submits the disbursement request to the warden for approval. Although Feltes does not explicitly state so, it appears that her delivery of the information to the warden satisfies the requirement that a staff member verify the identity of the inmate make the request. Feltes states that, once she delivers the information to the warden, her involvement in the approval process ends. Dkt. No. 35 at ¶¶48-51; Dkt. No. 45 at ¶¶3.

Thompson gave his completed disbursement requests with two addressed and stamped envelopes to staff to be placed in Feltes' mailbox. Two days later, on December 20, 2023, Thompson went to Feltes' office to ask about his requests. According to Thompson, Feltes told him that she had not checked her mail. The next day, Thompson again spoke to Feltes. He asserts that he showed her proof of a phone call he had had with Rose a couple weeks earlier and he showed her Rose's business card. He states that Feltes refused to look at what he was trying to show her and informed him if she had any questions, she would ask. Thompson explains that, about a week later, he tried to talk to Feltes for a third time. He states that he explained to her that the delay was harming his relationship with Rose. Thompson asserts that Feltes commented that he was making staff's job harder again and that she does not like that. According to Thompson, this was the same phrase Feltes had used when Thompson talked to her about the visitation policy. Thompson states that he asked her if she was delaying the approval of his disbursement request because of the inmate complaint he had filed back in September. According to Thompson, Feltes told him that he did not need to come to her office anymore because she would get to it when she gets to it. Dkt. No. 43 at ¶¶15-43.

3

Feltes recalls Thompson coming into her office in December 2023 to ask about the approval of the disbursement requests. She has an open-door policy and frequently has long lines of people with questions. She explains that not every issue can be easily resolved, and given her many responsibilities, she cannot always drop everything to immediately address an inmate's concern. Feltes acknowledges that she may have said she would get to his requests when she could, but she denies that she told him he was making staff's job harder. Feltes explains that she did not treat Thompson's disbursement requests any differently than she treats other requests. She states that, because the requests were for more than $250, she sent them and the relevant information to the warden's office for final approval. Feltes confirms that the ultimate decision to approve or deny the requests was out of her hands. She denies that she retaliated against Thompson for previously filing an inmate complaint and stresses that she did not know Thompson had filed an inmate complaint. Dkt. No. 35 at ¶¶55-58.

On January 10, 2024, a few weeks after submitting his disbursement requests, Thompson submitted an inmate complaint asserting that he was being denied access to the courts because his disbursement requests were not being processed. Thompson listed the date of the incident as December 18, 2023, the day he first submitted his disbursement requests. Freund reviewed the inmate complaint and understood Thompson to mean that he first became aware of Feltes' refusal to process the disbursement requests on December 18, 2023. Freund asserts that he did not investigate the inmate complaint; instead, he rejected the inmate complaint as untimely because Thompson filed it beyond the fourteen-day time limit set in the administrative code. Thompson submitted a second inmate complaint raising what Freund believed to be the same issue—namely, that Feltes had refused to process his disbursement requests. Thompson rejected the second inmate complaint as untimely. The reviewing authority upheld both rejections. Thompson later filed an

inmate complaint about Freund rejecting his inmate complaints. That inmate complaint, which was investigated by a different institution complaint examiner, was also dismissed. Dkt. No. 35 at ¶¶28-32.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Thompson first asserts that Feltes retaliated against him when she delayed approving his disbursement requests because he had filed an inmate complaint about a visitation policy that he disagreed with. To prevail on a retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a

5

motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). No reasonable jury could conclude that Thompson has made such a showing.

It is undisputed that Thompson engaged in activity protected by the First Amendment when he submitted an inmate complaint about the visitation policy. And while a jury could reasonably conclude that Thompson suffered a deprivation when his disbursement requests to cover a lawyer's retainer fee were not approved within a reasonable amount of time, Thompson's claim fails because he offers no evidence suggesting that Feltes was responsible for the deprivation about which he complains. Under §1983, "a public employee's liability is premised on her own knowledge and actions." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017). Feltes asserts that she treated Thompson's disbursement requests the same way she treats every other request for more than $250. She explains that she gathered the relevant information and delivered the requests to the warden for final approval, as required by policy. Feltes confirms that she does not have authority to approve disbursement requests for more than $250, and that once she delivers the requests and information to the warden, her involvement in the approval process concludes.

Thompson provides no evidence rebutting Feltes' assertions that she processed his requests consistent with the policy and consistent with how she processes all requests for large disbursements. Thompson speculates that Feltes must have delayed or somehow sabotaged the process because the warden *still* has not approved or denied the request. But Thompson's speculation is insufficient to create a genuine issue of fact for the purposes of summary judgment. *See Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017). At most, Feltes can be accused of not following up with the warden to confirm he finalized the approval. But "[p]ublic officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner

is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The record shows that Feltes completed her part of the approval process, and the Constitution imposes no duty upon her to ensure that someone else, *i.e.*, the warden, does the same. In short, because Feltes is not responsible for the deprivation about which Thompson complains, Thompson's retaliation claim against her must be dismissed.

Thompson's retaliation claim against Freund also fails. It is not clear why Thompson believes Freund retaliated against him when he rejected his inmate complaints about Feltes as untimely. Thompson engaged in protected activity involving Freund when he filed an inmate complaint about Freund's rejection of Thompson's inmate complaints about Feltes. But that inmate complaint about Freund was filed *after* the rejection of the inmate complaints. Freund's rejection of the inmate complaints cannot have been motivated by protected activity that had not yet occurred.

To the extent Thompson intended to pursue an access-to-the courts claim against Freund based on Freund's rejection of his inmate complaints, it has long been held that a defendant's allegedly improper dismissal or rejection of an attempt to file an inmate complaint fails to state a claim upon which relief can be granted. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). An improper rejection of an inmate complaint may be relevant to the determination of whether the administrative remedies were available to a prisoner, but the fact that Thompson is "currently exercising his right to petition the government for redress of grievances through this lawsuit

[demonstrates that] he has not been harmed" by the improper rejection of his inmate complaints. *Id*. Freund is therefore entitled to summary judgment.

Finally, the record shows that Thompson's Sixth Amendment claim based on allegations that Feltes interfered with his right to counsel when she refused to process his disbursement requests fails. The only avenues for relief available to Thompson are petitions for post-conviction relief or a habeas petition, and "[t]here is no right to counsel in postconviction proceedings . . . ." *Garza v. Idaho*, 586 U.S. 232, 245 (2019); *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.1996) ("Whereas a direct criminal appeal has now become a fundamental part of the criminal justice system, state post-conviction relief is not a part of the criminal proceeding—indeed, it is a civil proceeding that occurs only after the criminal proceeding has concluded."). In other words, given that Thompson is not pursuing a direct criminal appeal but only post-conviction relief, his Sixth Amendment rights were not implicated.

In his response materials, Thompson explains that he intended to bring this claim under the First Amendment, not the Sixth Amendment. According to Thompson, Feltes' failure to approve his disbursement requests interfered with his right to hire and consult the attorney of his choosing. But as already explained in connection with Thompson's retaliation claim against Feltes, Feltes was not responsible for the delay in approving the disbursement requests. The record shows that Feltes processed the requests the same way she processes every other request for a disbursement of more than $250—she gathered the relevant information and forwarded it to the warden for final approval. Feltes did all that her job required of her, and the Constitution demands no more. Accordingly, no jury could reasonably conclude that Feltes interfered with Thompson's efforts to hire the attorney of his choosing, and she is entitled to summary judgment on this claim.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 33) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Signed at Milwaukee, Wisconsin this 20th day of October, 2025.

Stephen C. Dries
United States Magistrate Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.